DANIEL MAGARITY *v.* THE MAYOR AND COUNCIL OF WIL-
MINGTON.

The city of Wilmington, as a municipal corporation, is not liable for conse-
quential damages in flooding cellars by raising the grade of a street.

A municipal corporation is not liable for damages resulting from an act done
or authorized by it in the due exercise of a discretion conferred upon it by
law.

The functions of such a corporation are of two kinds, judicial and ministerial.
Under the former are classed all those powers which are discretionary merely,
such as those exercised in this case, of building the sewer in Monroe Street
and raising the grade of Maryland Avenue. To the extent of deciding upon
the location, the size, the inlets and outlets of the sewer, and the height and
grade of the bed of the avenue, the powers were purely judicial or mental
determinations, subject, as all such are, to the natural infirmity of human
judgment. For the existence of such infirmity no court anywhere has ever
held a party liable, nor for the mere mistakes or errors that resulted from it.
They have never treated them otherwise than as misfortunes merely, involv-
ing no civil responsibility ; and it is because of this consideration that such
acts of a municipal body as are purely judicial or discretionary subject the
corporation to no responsibility whatever, though they may result in great
mischief or injury to individuals.

In the powers ministerial are embraced such acts of the municipal body
through its officers or agents as are the expression or exercise of discretion
in the matter of action, or things done in pursuance or in furtherance of the
ends to be accomplished and determined upon by the discretion or judgment
of the body politic. When in the use of powers ministerial or executory
merely its course is a well-defined one, and it must follow it with due care,
or submit to the legal consequences, for municipal corporations, though
public bodies, are as subject to this rule of conduct as individuals are. Ac-
cordingly, the plan of grading Maryland Avenue and of constructing the
sewer under Monroe Street, as matters to be decided by the municipal cor
poration, involved no sort of responsibility to private parties, but the carry-
ing into effect the work contemplated by engineering agency, or by mechanical
or manual labor, was not in any sense an exercise of a judicial, but of a min-
isterial power. When such a corporation acts in execution of a plan or design
which it has determined on it loses its shield of judicial protection, and
becomes as liable for faults or errors in its action, as individuals who are held
to competent skill in the performance of any work they may lawfully under-
take that may affect the rights of others.

The law in such actions as this takes no account, nor allows a jury to do so, of
any conjectural or speculative damages merely, or of any damage which is
not the natural and proximate result of the act done, and which is not
reduced by proof to an actual money estimate.

THIS was an action on the case brought by Daniel Magarity, who was the owner and occupant of a house in the city of Wilmington, against the municipal corporation of it, for consequential damages resulting to him from the flooding of the cellar and the surrounding premises of it with water, in consequence of changes made in the grading and draining of the public streets in the vicinity, made since the erection of it by the order and direction of the city corporation, and which he alleged had been so improperly, inadequately, and insufficiently planned and constructed as to occasion the injury complained of by him.

The evidence in the case showed that his property in question had been very seriously injured and damaged by being flooded with water since the changes had been made in the grade and sewers of the streets referred to, and the main if not the only question involved in the case was whether the city was liable for it.

*Lore*, for the plaintiff: As the duty and obligation of providing drainage or sewerage of surface water in the streets of the city was judicial, or at least *quasi* judicial in its character, requiring the exercise of judgment in devising and executing the best and most efficient plan and method of doing it, the legal principle very properly follows that the corporation is not liable to a civil action for wholly failing to provide it when necessary, nor perhaps for any defect or want of efficiency in the plan of it when adopted, or for the insufficient size of the gutters or sewers for the purposes intended, particularly if the adjoining property in question should be left in no worse condition than if no gutters or sewers whatever had been constructed. But when the duty in that respect ceases to be judicial and becomes ministerial in its character, although there be no statute on the subject, a municipal corporation is liable in a civil action to any owner of such property in the city for the negligent discharge or for the negligent omission to discharge such duty for any such injury resulting therefrom to such owner. Therefore, in accordance with the distinction in this respect between the judicial and ministerial duties on the part of the corporation (a distinction plain in theory, but oftentimes of difficult application

in particular cases) a municipal corporation is liable in a civil action for negligence in the ministerial duty and obligation of keeping in order and repair, which it alone has the power and authority to do, of the public sewers of the city, as respects the property of such an owner as is connected therewith by his own private drains, in consequence of which he has sustained an injury to his property which could have been avoided and prevented had such public sewers been kept in proper order and condition and sufficient to vent all the water emptying into them at all times, or to prevent obstructions from forming in them so as to dam and hold back the water in the cellars and drains of such property. The work of constructing, repairing, and cleansing and keeping in good and sufficient order and condition all public sewers, gutters, and drains in the city is a ministerial duty and function imposed by the charter on the municipal corporation of the city, and it is responsible in a civil action on the case at the suit of any owner of such property in the city for any injury or damages resulting from the negligence with which they have performed the work. 2 *Dillon on Mun. Corp.*, secs. 801, 802; *Clark* v. *The City of Wilmington*, 5 *Harr.* 243; *Miller* v. *The City of Brooklyn*, 5 *Am. Law Regr.* 33; *S. C.*, 32 *N. Y.* 489. If, however, the capacity of the public sewer in question in this case was not sufficient to vent the water flowing into it, the corporation would not be liable, provided the plaintiff's property was no worse after than before the sewer was constructed.

*Macallester* (*Bradford* with him), for the defendant, asked the court to charge the jury that any damage or loss the plaintiff may have sustained by reason of any and all overflows of water resulting from the leveling of Maryland Avenue at the junction of Monroe and Chestnut Streets (where the culvert was carried across said avenue) is *damnum absque injuria*, and the city is not responsible or liable therefor in this action. Also that any damage or loss the plaintiff may have sustained by reason of any and all overflows of water resulting from the insufficiency in the size of the inlets leading into the sewer in question is *damnum absque injuria*, and the city is not responsible or

liable therefor in this action. And further, that any damage or loss the plaintiff may have sustained by reason of any and all overflows of water resulting from the insufficiency in the size of the sewer in question (the Monroe Street culvert) is *damnum absque injuria*, and the city is not responsible or liable therefor in this action. *Rev. Code* 414, 415, 443 ; 5 *Harr.* 243 ; 35 *Pa.* 324 ; 69 *Pa.* 420 ; 9 *Watts* 382 ; 18 *Pa.* 187 ; 1 *Denio* 595 ; 32 *N. Y.* 489 ; 13 *Gray* 601 ; 4 *Allen* 41 ; 10 *Allen* 106 ; 29 *N. Y.* 459 ; 28 *Conn.* 50. That the city is not responsible or liable in this action for any damage or loss that the plaintiff may have sustained by reason of the drain connecting his cellar with the sewer in question, if said drain was placed there at his request or with his consent. That the plaintiff, in erecting his house before the establishment of the legal grade of Maryland Avenue, and before receiving the elevation of the curb line, built at his peril so far as loss or damage might result to him from the lawful improvement of the adjacent streets or the lawful construction of sewers ; and that the plaintiff is not entitled to recover any damages in this action unless the jury are satisfied upon the evidence adduced before them that the Monroe Street culvert leaked, and that by reason of such leaking the plaintiff has sustained loss or damage and in that case he can recover only the amount of damage directly resulting from such leakage.

But if the court should decline to give to the jury the three instructions first above mentioned or any of them, the court is asked to give the next following instruction in lieu of the instruction or instructions they may decline to give as above, to wit : That if the jury believe that the plaintiff refused to allow the city authorities to raise his curb and sidewalk in order to protect his premises from overflows of surface water from the streets, and that in consequence of such refusal his curb and sidewalk were not raised, the plaintiff is estopped from claiming or recovering any damages or losses resulting to him from any and all overflows of surface water from the streets which would have been prevented by such raising of his curb and sidewalk. But if the plaintiff is entitled to recover any damages in this cause, he can recover only for losses sustained by him during the period of three years next preceding the bringing of this

action, to wit : from April 24th, 1875, to April 24th, 1878, and such losses must not be conjectural, but must have been proved in this action, and that no depreciation in the value of the plaintiff's premises, resulting from a liability to overflows of surface water from the streets by reason of the leveling and improvement of Maryland Avenue, can be considered by the jury in ascertaining the damages (if any) in this action.

*Lore:* If the jury were satisfied from the evidence in the case that the inlets into the sewer in question were originally constructed of insufficient dimensions to admit the flow of the water into it, then it was a ministerial act and a mistake committed in the construction of it, and if in consequence the injury and damage to the plaintiff became greater after than it had been before the raising of the grade and bed of Maryland Avenue, the plaintiff would be entitled to recover in the action for it.

*The Court, Comegys, C. J., charged the jury :* This is not a case of first impression in this State, although the principles that govern it have not been much understood by the public, or even by the profession. So far as anything appears by the report of the case of *Clark* v. *The City of Wilmington,* 5 *Harr.* 243, the Superior Court of this county in 1849 had no cases before them for their guidance, and yet they made a decision in the case in accordance with the best authorities elsewhere and consistent with the reason of the matter itself. I can say this properly, for neither my brother Houston nor myself were members of the court at that time. In one aspect in which this case has been presented to this court and jury, it is impossible to distinguish that case from the one before us. There the action was for damages by reason of flooding cellars by raising the grade of a street ; here, one of the grievances for which the suit was brought is the same precisely. In both, the question is presented of the liability of the city of Wilmington, as a municipal corporation, for consequential damages arising from the exercise by the authorities of the city of a power conceded by the plaintiff to exist in it. In that case, the decision of the court was that the city was not liable for such damages, and if we had any doubt, not controlling, of the sound-

ness of the view taken by the court in the case, which we have not, we should still feel constrained to sustain it, it being safer always to abide by or follow a precedent established by our own courts, though a different one might fairly have been made, than to stray into the wide field of judicial decision in the hope of finding one established elsewhere which may seem more consonant with one's individual views.

The principle of the decision in *Clark* v. *The City of Wilmington*, as in that of the important cases cited and commented upon by the defendant's counsel, is this : that a municipal corporation is not liable for damages resulting from an act done or authorized by it in the due exercise of a discretion conferred upon it by law.    The functions of such a corporation are of two kinds, judicial and ministerial.    Under the former are classed all those powers which are discretionary merely, such as those exercised in this case, of building the sewer in Monroe Street and raising the grade of Maryland Avenue, formerly the Newport Turnpike. To the extent of deciding upon the site, the size, the inlets and outlets of this sewer, and the height and grade of the bed of the avenue, the powers were purely judicial or mental determinations, subject, as all such are, to the natural infirmity of human judgment. For the existence of such infirmity, no court anywhere has ever held a party liable, nor for the mere mistakes or errors that resulted from it.    The absence or want of sufficient mind to decide right with respect to the affairs of this world at least has never been treated otherwise than as a misfortune purely, involving no civil responsibility.    It is because of this consideration that such of the acts of a municipal body (and it is precisely such a body that we are now dealing with) as are purely judicial or discretionary, subject the corporation to no responsibility whatever, though they may result in great mischief or injury to individuals. When pursuing or exercising that function a municipal corporation is as free from all liability for consequences resulting from error of judgment as is this court or any other judicial tribunal acting within its sphere, when it makes mistakes—as the wisest courts sometimes do, to the serious detriment of individuals.    When the right to exercise judgment exists, a party who does it honestly is answerable in no court for the conse-

quences that result from it. It would be a serious defect in the arrangement of human responsibility were it otherwise. Municipal bodies are bodies politic, within a larger body politic—the entire State. The discretionary powers granted them are simply part of such powers held by the whole and delegated to them. The agents or officers of those bodies (in this case the city council) are in their turn the recipients of divisions or parts of the same powers, and are to be treated with respect to the subject of responsibility as the corporation itself—no personal liability whatever attaching to them. Under the powers ministerial are embraced all such acts of the municipal body, through its officers or agents, as are the expression or exercise of discretion in the matter of action ; that is, the things done in pursuance or in furtherance of the end to be accomplished by the discretion or judgment are ministerial. Now, there is a wide distinction between judicial or discretionary and ministerial acts, already referred to. No exercise of the human intellect, how perfect soever the training of the mental faculties may have been from the teachings of the best schools and the study of the best forms and methods of human reasoning, can make perfect the conclusions of the mind of any man. When he has done the best he can, with the best lights he can collect for the illumination of his mind, he is not responsible for error, and ought not to be. But when he is in the use of powers merely ministerial, that is, executory merely, his course is a perfectly well-defined one, and he must follow it with due care or submit to the legal consequences of not doing so. Municipal corporations, though public bodies, are as subject to this rule of conduct as individual persons are ; there is no different law between them. Keeping these views in mind, you will, I think, gentlemen of the jury, find no legal impediment or stumbling-block in the way of your progress to the end of a just decision in this case.

There is no dispute about the fact that the powers of the corporation of the city of Wilmington are plenary for all that concerns the comfort, happiness, and security of the inhabitants as members of the local body politic. The legislature of this State has been applied to from time to time, and often by the authorities of the city, for new or better defined municipal or police

powers, and their application has always been favorably entertained; and for a long time past—years before any of the work, injury from which is complained of in this case, was done—the city had ample power over its streets both upon and under their surface to promote the interest of the whole people living within it. Accordingly, it could make and establish such grades as it chose, and construct and build sewers with their appliances for purposes of drainage and security of the public health. To decide to what extent these powers should be exercised was one of pure judgment or discretion, involving no accountability of any kind, except to the people of the municipality in the exercise of their power of election. Accordingly, the grading of the avenue in this case, and the construction of the sewer, as matters of decision by the city authorities involved no sort of responsibility to private parties; that is, the determination to grade and construct and the form of doing both was a plan of action entirely judicial; but the carrying into effect the work contemplated by engineering agency or by actual mechanical or manual labor was not in any sense a judicial proceeding but was ministerial. Now, when a public corporation, as a city, acts ministerially, or in the execution of a plan or design which it has determined on, it ceases to have the judicial shield of protection and becomes as liable for faults or errors of action as individuals are. The latter are held to competent skill in the performance of any work they may lawfully undertake that may affect the rights of others, and the former are in no better case. You are to treat this corporation, therefore, in the matter of any damage that you may believe from the testimony accrued to the plaintiff from any defect in the *work* of the city, just as you would a private individual but not more unfavorably. The city had a right to grade the street and build the sewer, and the plan of doing both was discretionary purely, involving no responsibility to a damaged party; but it was as much bound, but no more, to do its work well as an individual. Whether it was well done or not in this instance it is for you alone to judge from the proof in the cause, and not otherwise than by the proof. We call your attention to all the testimony which has been offered on both sides upon the subject of the construction of the

34

sewer—the alleged intrusion of the water, that should have gone down it, into the cellar of the plaintiff; the alleged holes in the sewer opposite the premises of the plaintiff, the description of the effect upon its floor by the rise and fall of water in the sewer, the testimony that these holes did not extend through the sewer wall, that the work was well and sufficiently done, and as sewers are commonly built; that the plaintiff declared to two of the defendant's witnesses that he made no complaint of the sewer, but of the overflowage of his premises by the avenue grade only, and the further fact that the plaintiff's building was erected upon a lot which was very low, marshy, and wet at times; and to all other matters proved, more within your own knowledge than ours, which tend to support the claim of the plaintiff to damage from the sewer and the defense of the city against it. This is the material and, in fact, only thing you are to consider upon the question of damage.

We say you are to consider the defect in the construction of the sewer only as the subject-matter of damage to the plaintiff, if he has sustained any, in fact, from it. For we instruct you that no proof having been made that the city in raising the grade of and filling up Maryland Avenue acted in an unskillful, oppressive, or designedly injurious manner in any respect to the plaintiff, he has sustained no injury, no matter what the damage he has proved, that gives him a right of action against the city. Every man in a city holds his property subject to the right of the authorities having power for that purpose (as these authorities are conceded to have had) to regulate and fix the grade of the streets by elevating or lowering them according to their judgment or discretion of what will be best for the public interest. If after such regulation he is obliged to ascend into or descend from his property, which before was upon a level with the street, or to be subjected to the flowage upon his lot of surface water which before flowed over the street, he has no relief whatever against the city, to the street of which his own property becomes subject to what is known in the law in other cases as a servitude. In the charter of some cities or municipalities there is relief for this, but here there is none, and neither you nor we can afford any. You are therefore to lay out of

view entirely all the proof of the overflow of the plaintiff's premises from the grading of Maryland Avenue. You can give no damages on that account.

Should you believe, gentlemen, upon a calm, deliberate consideration of the testimony on both sides, that the sewer built by the defendant was in its structure deficient and not in accordance with the mode of building such works, and that the plaintiff has proved to you satisfactorily, by the evidence of his witnesses, not successfully contradicted by the witnesses for the defendant, that he has sustained damage to his premises thereby, you are still to be reminded that the question of the sufficiency of the sewer to vent the water directed from the surface into it or the size of its inlets is one not involved in this case, as being one of discretion in the city only, and also that you have no right to allow for any damage the amount of which has not been *proved* to you, nor any whatever accruing at any other time than between the 24th day of April, 1875, and the like day in 1878, or during the period of three years before bringing the suit in this case. This will necessarily exclude the damage by the settling of the walls and their cracking in 1872, or at any other time prior to the 24th day of April, 1875, or since the 24th of April, 1878. And you can allow for no damage proof of which by a money estimate has not been made. In these cases nothing is to be left to imagination or speculation, but everything is to be brought down to the straight and plain line of actual proof. All damages not proved by a money estimate are purely remote or speculative, and the jury has no right whatever to consider them, however it may comport with their notions of right to do so. The law in such actions as this takes no account, nor allows a jury to do so, of any damage which is not the natural and proximate result of the act done and which is not reduced by proof to dollars and cents.